IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **WILLIE FRED LEE,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:19-cv-2690-L** |
| | § | |
| **DALLAS COUNTY, et al.,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants Texas Department of Criminal Justice's ("TDCJ") and University of Texas Medical Branch at Galveston's ("UTMB") (collectively, "Defendants") Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and (12)(b)(6) ("Motion") (Doc. 17), filed May 26, 2020. After careful consideration of the Motion, response, record, and applicable law, the court **grants in part and denies in part** Defendants' Motion (Doc. 17).

## I.    Factual and Procedural Background

Plaintiff Willie Fred Lee ("Plaintiff" or "Mr. Lee") was placed in the custody of Dallas County Jail on November 2, 2017. When placed in custody, Mr. Lee informed the jail staff that "he needed the assistance of a walker in order to ambulate and conduct ordinary life activities." Pl.'s Am. Compl. ¶ 7. Mr. Lee alleges that, because he did not have the assistance of a walker, he fell on November 11, 2017, and suffered head and knee injuries.[1] Mr. Lee was provided with a walker in December 2017 but alleges the walker was not adequate for his needs. *Id.* ¶ 11.

---

[1] While the date of the injury in Plaintiff's Amended Complaint reads "November 11, 2019," the court infers from the surrounding timeline that Plaintiff meant the year 2017.

On January 18, 2018, Mr. Lee was transferred into the custody of the Buster Cole Unit, which is part of the TDCJ prison system.  Upon arrival, Mr. Lee alleges that he "informed TDCJ and UTMB officials of the condition of his knees." *Id.* ¶ 12. Mr. Lee remained in the custody of TDCJ until February 2018, when he was discharged. He further alleges that he did not have the assistance of a walker while in TDCJ custody, which caused "great pain." *Id.* ¶ 13.

Mr. Lee filed his Complaint (Doc. 1) on November 11, 2019, against two Defendants: Dallas County Sheriff Office and TDCJ. He filed his First Amended Complaint (Doc. 6) ("Amended Complaint") on December 30, 2019, bringing an action under Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("RA") against four defendants: Dallas County, Dallas County Hospital District (d/b/a Parkland Health and Hospital System), TDCJ, and UTMB.[2] Defendant Dallas County Hospital District filed its answer (Doc. 14) on May 22, 2020, and Defendant Dallas County filed its answer (Doc. 16) on May 26, 2020.

Defendants TCDJ and UTMB filed their Motion to Dismiss on May 26, 2020. After the court granted a request for an extension of time to respond, Plaintiff filed his Response to Defendant TDCJ's Motion to Dismiss ("Response") (Doc. 22) on June 26, 2020. This opinion only addresses the Motion with respect to Defendants TDCJ and UTMB, as Dallas County and Dallas County Hospital District did not join in the Motion.

---

[2] The court terminated Dallas County Sheriff Office as a defendant on December 30, 2019, per the Amended Complaint.

**Memorandum Opinion and Order – Page 2**

II.     **Legal Standard**

A.      **Standard for Rule 12(b)(1) – Subject Matter Jurisdiction**

1.      **The General Standard**

A federal court has subject matter jurisdiction over civil cases "arising under the Constitution, laws, or treaties of the United States," and over civil cases in which the amount in controversy exceeds $75,000, exclusive of interest and costs, and in which diversity of citizenship exists between the parties.  28 U.S.C. §§ 1331, 1332.  Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim.  *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (citations omitted); *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).  Absent jurisdiction conferred by statute or the Constitution, they lack the power to adjudicate claims and must dismiss an action if subject matter jurisdiction is lacking.  *Id.*; *Stockman v. Federal Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994)).  A federal court must presume that an action lies outside its limited jurisdiction, and the burden of establishing that the court has subject matter jurisdiction to entertain an action rests with the party asserting jurisdiction.  *Kokkonen*, 511 U.S. at 377 (citations omitted).  "[S]ubject-matter jurisdiction cannot be created by waiver or consent."  *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001).

Federal courts may also exercise subject matter jurisdiction over a civil action removed from a state court.  Unless Congress provides otherwise, a "civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

Memorandum Opinion and Order – Page 3

A federal court has an independent duty, at any level of the proceedings, to determine whether it properly has subject matter jurisdiction over a case. *Ruhgras AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level."); *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n.5 (5th Cir. 2005) (A "federal court may raise subject matter jurisdiction *sua sponte*.") (citation omitted). In considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "a court may evaluate (1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001) (citation omitted). Thus, unlike a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court is entitled to consider disputed facts as well as undisputed facts in the record and make findings of fact related to the jurisdictional issue. *Clark v. Tarrant Cnty.*, 798 F.2d 736, 741 (5th Cir. 1986). All factual allegations of the complaint, however, must be accepted as true. *Den Norske Stats Oljeselskap As*, 241 F.3d at 424.

### 2.       Sovereign Immunity

Defendants allege that the court does not have subject matter jurisdiction because they are protected by sovereign immunity. "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Supreme Court has interpreted the Eleventh Amendment to also mean "a federal court generally may not hear a suit brought by any person against a nonconsenting State." *Allen v. Cooper*, 140 S. Ct. 994, 1000 (2020).

While states are generally immune from suit, sovereign immunity is not absolute, as "[f]ederal courts are without jurisdiction over suits against a state, a state agency, or a state official in his official capacity unless that state has waived its sovereign immunity or Congress has clearly abrogated it." *High v. Karbhari*, 774 F. App'x. 180, 183 (5th Cir. 2019) (citing *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 393-94 (5th Cir. 2015)).

States or state officers may waive their sovereign immunity under the Eleventh Amendment in multiple ways. First, if "on its own initiative, a state enacts a statute that consents to suit, it abandons sovereign immunity." *Black v. North Panola Sch. Dist.*, 461 F.3d 584, 593 (5th Cir. 2006). In giving such express consent in a statute, the state must "voluntarily invoke[] or submit[] to *federal* jurisdiction." *Faulk v. Union Pac. R.R. Co.*, 449 F. App'x 357, 363-64 (5th Cir. 2011) (emphasis added); *see also Atascadero State Hosp. v. Scanlon*, 473 U.S. 234 n.1 (1985) (requiring an "*unequivocal indication* that the State intends to consent to *federal* jurisdiction") (emphasis added). Second, "[a] state waives its immunity by voluntarily participating in federal spending programs," but "only when Congress includes a clear statement of intent to condition participation in the programs on a State's consent to waive its constitutional immunity." *Hurst v. Texas Dep't of Assistive & Rehab. Servs.*, 482 F.3d 809, 811 (5th Cir. 2007). Finally, states may voluntarily invoke federal jurisdiction, which would constitute a waiver of the state's sovereign immunity. *Lapides v. Board of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 620 (2002); *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 243 (5th Cir. 2005). States may invoke federal jurisdiction, for example, by voluntarily agreeing to remove a case from state court to federal court. *See Lapides*, 535 U.S. at 620.

Even if a state has not waived its sovereign immunity, Congress may abrogate it pursuant to its enforcement power under the Fourteenth Amendment. U.S. Const. amend. XIV, § 5;

*Coleman v. Court of Appeals of Md.*, 566 U.S. 30, 36 (2012). "Congress may abrogate a state's sovereign immunity only if it (1) makes 'unmistakably clear' its intent to do so and (2) acts pursuant to a constitutionally valid exercise of its power." *McCardell v. United States Dep't of Hous. & Urb. Dev.*, 794 F.3d 510, 522 (5th Cir. 2015) (citing *Nevada Dep't of Hum. Res. v. Hibbs*, 538 U.S. 721, 726 (2003)). To validly exercise the Enforcement Clause of the Fourteenth Amendment to abrogate state sovereign immunity under the Eleventh Amendment, Congress must: (1) make clear in the statute its intent to abrogate state immunity, (2) identify a pattern of unconstitutional actions, and (3) tailor the remedy proportionately to those unconstitutional actions. *Coleman*, 566 U.S. at 30, 35, 43.

## B.   Standard for Rule 12(b)(6) – Failure to State a Claim

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Reliable Consultants, Inc. v. Earle*, 517 F.3d 738, 742 (5th Cir. 2008); *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007). A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citation omitted). The "[f]actual allegations of [a complaint] must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in

fact)." *Id.* (quotation marks, citations, and footnote omitted).  When the allegations of the pleading do not allow the court to infer more than the mere possibility of wrongdoing, they fall short of showing that the pleader is entitled to relief.  *Iqbal*, 556 U.S. at 679.

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff.  *Sonnier v. State Farm Mutual Auto. Ins. Co.,* 509 F.3d 673, 675 (5th Cir. 2007); *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  In ruling on such a motion, the court cannot look beyond the pleadings.  *Id.*; *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).  The pleadings include the complaint and any documents attached to it.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000).  Likewise, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims."  *Id.* (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).  In this regard, a document that is part of the record but not referred to in a plaintiff's complaint *and* not attached to a motion to dismiss may not be considered by the court in ruling on a 12(b)(6) motion.  *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 820 & n.9 (5th Cir. 2012) (citation omitted).  Further, it is well-established and "clearly proper in deciding a 12(b)(6) motion [that a court may] take judicial notice of matters of public record."  *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011)  (quoting *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)).

The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff.  *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002).  While well-pleaded facts of a

complaint are to be accepted as true, legal conclusions are not "entitled to the assumption of truth."

*Iqbal*, 556 U.S. at 679 (citation omitted).  Further, a court is not to strain to find inferences

favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or

legal conclusions.  *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted).

The court does not evaluate the plaintiff's likelihood of success; instead, it only determines

whether the plaintiff has pleaded a legally cognizable claim.  *United States ex rel. Riley v. St.*

*Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004).  Stated another way, when a court

deals with a Rule 12(b)(6) motion, its task is to test the sufficiency of the allegations contained in

the pleadings to determine whether they are adequate enough to state a claim upon which relief

can be granted.  *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977); *Doe v. Hillsboro*

*Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996), *rev'd on other grounds*, 113 F.3d 1412 (5th

Cir. 1997) (en banc).  Accordingly, denial of a 12(b)(6) motion has no bearing on whether a

plaintiff ultimately establishes the necessary proof to prevail on a claim that withstands a 12(b)(6)

challenge.  *Adams*, 556 F.2d at 293.

### III.    Discussion

#### A.    Parties' Contentions

Plaintiff brings claims under Title II of the ADA and Section 504 of the RA. Defendants

TDCJ and UTMB seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of

subject matter jurisdiction and, alternatively, Federal Rule of Civil Procedure 12(b)(6) for failure

to state a claim.

Under Rule 12(b)(1), Defendants assert they are entitled to sovereign immunity under the

ADA and RA. Specifically, Defendants address sovereign immunity under the ADA, citing the

Supreme Court's three-part test outlined in *United States v. Georgia*, 546 U.S. 151, 159 (2006),

which determined when Title II of the ADA validly abrogates a state's sovereign immunity. Under the *Georgia* test, Defendants contend that the misconduct alleged by Plaintiff does not validly abrogate the state's immunity under the ADA. Defendants do not address their sovereign immunity under the RA.[3]

Under Rule 12(b)(6), TDCJ and UTMB raise three arguments by asserting that Plaintiff failed to: (1) state a claim under the ADA/RA; (2) plead intentional discrimination; and (3) plead a legally cognizable injury. They further assert that Plaintiff failed to meet his burden to state a claim under the ADA/RA because he failed to: (1) state a disability as required by the ADA; (2) allege an exclusion from participation or denial of benefits of services, programs, or activities provided by TDCJ or UTMB; and (3) allege facts demonstrating intentional discrimination. Defendants also state that Plaintiff, by pleading claims that sound in negligence at most, "impermissibly seek[s] to convert the ADA/RA into a general liability statute." Defs.' Mot. 11.

In Plaintiff's Response,[4] he asserts that TDCJ has waived sovereign immunity with respect to the RA claim because the state's receipt of federal funds constitutes a waiver of sovereign immunity under the RA. Plaintiff does not address Defendants' assertions regarding the ADA sovereign immunity claim and application of the *Georgia* test. He also argues that he meets the requirement of a qualified individual under the ADA because he properly alleged that the arthritis in his knee caused him to require a walker to "conduct ordinary life activities." Additionally,

---

[3] Defendants also raise sovereign immunity under the Texas Torts Claims Act (TTCA). The court will not, however, address this sovereign immunity claim because Plaintiff does not bring any claims under the TTCA.

[4] In his Response, Plaintiff only addresses Defendant TDCJ and does not address Defendant UTMB. Because Plaintiff fails to defend his claims against Defendant UTMB, the court determines that Plaintiff has abandoned his claims with respect to Defendant UTMB only. *See Black*, 461 F.3d at 588 n.1 (noting a claim is considered abandoned if the plaintiff fails to pursue it beyond the complaint); *see also Brackens v. Ocwen Loan Servicing, LLC*, No. 3:13-CV-3458-L, 2015 WL 1808541, at *4 (N.D. Tex. Apr. 21, 2015).

**Memorandum Opinion and Order – Page 9**

Plaintiff states he meets the final two prongs of a claim under the ADA/RA because he alleges that

TDCJ failed to make reasonable accommodations.

When addressing claims under the ADA or the RA, the Fifth Circuit has noted, "The

ADA's language generally tracks the language of the Rehabilitation Act and expressly states that

the 'remedies, procedures and rights' of the Rehabilitation Act are obtainable under the ADA. . . .

As such, the '[j]urisprudence interpreting either section is applicable to both . . . .'" *Campbell v.*

*Lamar Inst. of Tech.*, 842 F.3d 375, 379 (5th Cir. 2016) (citations omitted). Accordingly, the court

will evaluate the ADA and RA claims using this standard.

**B.**     **Analysis**

**1.**     **Dismissal for Lack of Subject Matter Jurisdiction under Rule 12(b)(1)**

While TDCJ and UTMB only raise sovereign immunity under the ADA, Plaintiff addresses

the sovereign immunity waiver argument under RA jurisprudence. The jurisprudence interpreting

either section is applicable to both. *Id.* Recognizing this precedent, the court, at its discretion, will

address the RA sovereign immunity claim first.

Under the Civil Rights Remedies Equalization Act, a state "shall not be immune under the

Eleventh Amendment of the Constitution of the United States from suit in Federal court for a

violation of [the RA] . . . or the provisions of any other Federal statute prohibiting discrimination

by recipients of Federal financial assistance." 42 U.S.C. § 2000d-7. The Fifth Circuit has found

that this statute validly abrogates a state's sovereign immunity. *Pace v. Bogalusa City Sch. Bd.*,

403 F.3d 272, 280-81 (5th Cir. 2005) (en banc).

To state a claim under the RA, "a plaintiff must allege that the specific program or activity

with which he or she was involved receives or directly benefits from federal financial assistance."

*Block v. Texas Bd. of L. Exam'rs*, 952 F.3d 613, 619 (5th Cir. 2020). Under the RA, "the term

'program or activity' means all of the operations of . . . a department, agency, special purpose district, or other instrumentality of a State or a local government." 29 U.S.C. § 794(b)(1)(A); *Frame v. City of Arlington*, 657 F.3d 215, 225 (5th Cir. 2011) (finding that all operations of a city fell within the "program or activity" definition under the RA); *Taylor v. City of Shreveport*, 798 F.3d 276, 283 (5th Cir. 2015) (finding that a police department was a specific "program or activity" under the RA). Plaintiff has alleged that TDCJ and UTMB are recipients of federal funding. Pl.'s Am. Compl. ¶ 18. While Plaintiff does not allege that either Defendant is a program or activity as defined under the RA, the court, following Fifth Circuit precedent, determines that Defendants' operations fall within that definition under the statute. Moreover, neither Defendant denies receipt of federal funding; nor does either Defendant allege that it does not fall within the RA definition of a "program or activity." Thus, accepting Plaintiff's allegation that UTMB and TDCJ are recipients of federal funding as true, Plaintiff has successfully pleaded that TDCJ and UTMB have waived sovereign immunity with respect to Plaintiff's RA claim.

Because TDCJ and UTMB have waived sovereign immunity with respect to Plaintiff's RA claim, the court need not address sovereign immunity under the ADA and the test articulated in *United States v. Georgia*, as "[t]his circuit, as well as others, has noted that, because the rights and remedies under [the ADA and the RA] are the same, case law interpreting one statute can be applied to the other." *Pace*, 403 F.3d at 287-88. While the ADA and the RA have a difference in their causation requirements, the "difference is not implicated . . . where . . . the challenge is to architectural barriers." *Id.* at 288-89. Accordingly, when a defendant waives immunity to suit with respect to either an ADA or an RA claim, such defendant waives immunity to suit under *both* statutes. Thus, as Defendants do not dispute the receipt of federal funds, Defendants have waived their sovereign immunity with respect to Plaintiff's ADA and RA claims, and accordingly, the

court will deny Defendants' Motion to the extent they seek dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction.

### 2.    Dismissal for Failure to State a Claim under Rule 12(b)(6)

In the alternative, Defendants allege that Plaintiff has failed to state a claim under the ADA/RA. As previously stated, the jurisprudence under either statute is applicable to both. *Campbell*, 842 F.3d at 379. Any analysis under either statute, therefore, equally applies to both statutes.

> To establish a prima facie case of discrimination under the ADA, a plaintiff must [set forth allegations to] demonstrate: (1) that he is a qualified individual [with a disability]; (2) that he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination is by reason of his disability.

*Smith v. Harris Cnty.*, 956 F.3d 311, 317 (5th Cir. 2020) (citing *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2004)). This analysis will proceed in two parts. The first part will address the first prong of the ADA prima facie case, and the second part will address both the second and third prongs of the ADA prima face case.

The ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual; . . . a record of such an impairment; or . . . being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)-(C). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, *walking*, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A) (emphasis added). "The definition of disability in this chapter shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter."

*Id.* § 12102(4)(A). The statute notes that "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active." *Id.* § 12102(4)(D).

When courts interpret the term "substantially limits," they are to interpret it "consistently with the findings and purposes of the ADA Amendments Act of 2008." *Id.* § 12102(4)(B). "'Substantially limits' is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i) (2020). Furthermore,

> [t]he primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether an individual's impairment substantially limits a major life activity. Accordingly, the threshold issue of whether an impairment "substantially limits" a major life activity should not demand extensive analysis.

*Id.* § 1630.2(j)(iii). In one Fifth Circuit case, the court determined a prisoner was a qualified individual with a disability because he "experience[d] frequent dizzy spells that ha[d] caused injuries." *Garrett v. Thaler*, 560 F. App'x 375, 383 (5th Cir. 2014). The court in *Garrett*, when determining whether the plaintiff satisfied the first prong of the ADA, also emphasized that "substantially limits" should be "construed broadly in favor of expansive coverage." *Id.* (citing 29 C.F.R. § 163.2(j)(1)(i)).

Here, Plaintiff alleges that he suffers from arthritis and that the cartilage and tissue in his knees have worn away. Pl.'s Am. Compl. ¶ 7. He also alleges that when he was previously denied an accommodation to help him walk, he fell and suffered injuries. *Id.* ¶ 10. Defendants, however, assert that Plaintiff lacks "factual allegations otherwise indicative of intentional discrimination." Defs.' Mot. 6. They also assert that Plaintiff fails to "state what life activities he was unable to conduct or what specific physical impairment wholly prevents him from being able to walk without assistance." *Id.* at 7. Defendants rely on the restrictive standard set forth in *Toyota Motor Manufacturing v. Williams* to support their assertion that Plaintiff has not stated a claim of being

"substantially limited." *See id.* Congress, however, explicitly stated in the findings section of the ADA Amendments Act that "*Toyota Motor Manufacturing* . . . narrowed the broad scope intended to be afforded by the ADA . . . and interpreted the term 'substantially limits' to require a greater deal of limitation than was intended by Congress." ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 424 (2008); *see also Carmona v. Southwest Airlines Co.*, 604 F.3d 848, 855 (5th Cir. 2010) (acknowledging Congress's amendment to the ADA was in response to the restrictive interpretation in *Toyota Motor Manufacturing*). The court, therefore, finds Defendants' argument unavailing, as Congress has already rejected such a strict interpretation of substantial limitation.

Similarly, the court finds Plaintiff's reliance on *Carmona* unpersuasive. Plaintiff cites the *Carmona* case as a factually analogous case to support his claim. *See* Pl.'s Resp. 4-5. In *Carmona*, the plaintiff pleaded allegations related to immobility or painful mobility because of psoriatic arthritis, and the court determined those allegations were sufficient for him to be considered a disabled person under the ADA. *Carmona*, 604 F.3d at 857. Despite Mr. Lee's assertions, however, *Carmona* is not factually analogous to this action because he has not pleaded any allegations that his arthritis had a similar effect on him as the psoriatic arthritis did in *Carmona*.

Nonetheless, Plaintiff sets forth allegations that he had arthritis, that the cartilage and tissue in his knees had worn away, and that he required the assistance of a walker to conduct ordinary life activities. Pl.'s Am. Compl. ¶ 7. He also alleges that without the assistance of a walker, he had previously fallen and suffered injuries. *Id.* ¶ 10. Such allegations are sufficient to satisfy Congress's definition of a disability under ADA. Thus, accepting Plaintiff's allegations, and recognizing the broad scope intended by the statute, the court determines that Plaintiff has pleaded

sufficient allegations to establish that he is a qualified individual as required under the first prong

of the ADA/RA analysis.

Because the court has determined Plaintiff has set forth sufficient allegations to

demonstrate that he is a qualified person with a disability, the analysis continues to the second and

third prongs of the ADA. Plaintiff asserts Defendant TDCJ failed to make reasonable

accommodations for him as a disabled individual. Pl.'s Resp. 5.

> Title II requires public entities to make 'reasonable modifications in policies,
> practices, or procedures' for disabled individuals, unless the entity can show that a
> modification would 'fundamentally alter the nature' of the service or program it
> offers. A public entity's failure to make a reasonable modification may satisfy the
> second and third prongs of the prima facie case.

*Block*, 952 F.3d at 618 (citing 28 C.F.R. § 35.130(b)(1)(7)(i) (2020)). "An accommodation is

reasonable if it does not impose undue financial or administrative burdens or fundamentally alter

the nature of the service, program or activity." *Smith*, 956 F.3d at 317 (citations and internal

quotations omitted). "A claim for failure to accommodate under the ADA has the following

elements: (1) the plaintiff is a qualified individual with a disability; (2) the disability and its

consequential limitations were known by the covered institution; and (3) the covered institution

failed to make reasonable accommodations for such known limitations." *Choi v. University of Tex.*

*Health Sci. Ctr. at San Antonio*, 633 F. App'x 214, 215 (5th Cir. 2015) (citing *Taylor v. Principal*

*Fin. Grp., Inc.*, 93 F.3d 155, 164 (5th Cir. 1996)).

A plaintiff must sufficiently allege that both the disability *and* its consequential limitations

were known to the covered entity. *See id.* at 216 (emphasis added). Plaintiffs can allege that an

institution or entity knew of their disability and consequential limitation by alleging "they

identified their disabilities as well as the resulting limitations to a[n] . . . entity or its employees

and requested an accommodation in direct and specific terms." *Smith*, 956 F.3d at 317. If a plaintiff

Memorandum Opinion and Order – Page 15

fails to allege that the covered institution had knowledge of the disability and resulting limitation, he may overcome that failure by alleging that the limitations were "open, obvious, and apparent" to the institution or its relevant agents. *See id.* at 318; *see also Choi*, 633 F. App'x at 216.

Mr. Lee alleges that upon being placed in the custody of TDCJ, he informed TDCJ officials of the condition of his knees. Pl.'s Am. Compl. ¶ 12. He also alleges that he was in "great pain" while in the custody of TDCJ because he was not provided a walker. *Id.* ¶ 13. While this is sufficient to demonstrate that TDCJ had knowledge of the disability, there is no allegation that TDCJ had knowledge of the resulting limitation. Moreover, he fails to set forth any allegations that he requested an accommodation in direct and specific terms to TDCJ. Plaintiff alleges that he requested an accommodation in clear and specific terms from Dallas County Jail staff and Dallas County Hospital District staff (*id.* ¶ 7), but there is nothing in his Amended Complaint alleging this same request for an accommodation was made of TDCJ. Additionally, Plaintiff makes no assertions in his Response that he requested an accommodation in direct and specific terms to TDCJ.

Because there is neither an allegation of knowledge of the resulting limitation from the disability, nor an allegation that Plaintiff requested an accommodation in direct and specific terms, Plaintiff can only defeat a Rule 12(b)(6) motion if both his resulting limitation and necessary reasonable accommodation were open, obvious, and apparent to the entity's relevant agents. *Smith*, 956 F.3d at 318. There is no allegation in either Plaintiff's Amended Complaint or Response, however, that the resulting limitation and necessary reasonable accommodation for his arthritis were open, obvious, and apparent. The court, therefore, determines that Plaintiff has failed to sufficiently plead the second and third prongs necessary to state a claim under the ADA/RA.[5]

---

[5] Defendants argue that Plaintiff fails to allege intentional discrimination. Defs.' Mot. 11. "In the context of a failure-to-accommodate claim, intentional discrimination requires at least actual knowledge that an accommodation is

Thus, Plaintiff has failed to state a claim under the ADA/RA, and, accordingly, the court will grant

Defendants' Motion under Rule 12(b)(6) for failure to state a claim upon which relief may be

granted.[6]

## IV.    Amendment of Claims

In response to Defendants' Motion, Plaintiff did not request to amend his pleadings in the

event the court granted Defendants' Motion to Dismiss.  The provision of Rule 15(a)(2) of the

Federal Rules of Civil Procedure that states "[t]he court should freely give leave when justice so

requires" is not without limitation.  The decision to allow amendment of a party's pleadings is

within the sound discretion of the district court.  *Foman v. Davis*, 371 U.S. 178, 182 (1962);

*Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994) (citation omitted). In determining

whether to allow an amendment of the pleadings, a court considers the following: "undue delay,

bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of

the amendment, [and] futility of amendment." *Foman*, 371 U.S. at 182; *Schiller v. Physicians Res.*

*Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003) (citation omitted).

With respect to Defendant TDCJ only, the court determines that the deficient allegations

noted in this opinion may be cured by an amendment, and, thus, an amendment with respect to

TDCJ would not be futile. While Plaintiff has previously amended his pleadings, this was only to

name appropriate and additional Defendants. The factual allegations did not substantially change

from the Complaint to the Amended Complaint. Since the previous amendment did not relate to a

---

necessary." *Smith*, 956 F.3d at 319. Because the court has found that Plaintiff's allegations do not satisfy the knowledge requirement, the court need not address the issue of intentional discrimination.

[6] As the court has determined that Plaintiff has failed to state a claim under Rule 12(b)(6), it need not address the issue of cognizable injury, raised by Defendants (Defs.' Mot. 16) and addressed by Plaintiff in his Response (Pl.'s Resp. 6 n.2).

failure to plead sufficient facts, the court will allow Plaintiff to file a second amended complaint that addresses the concerns herein stated.

With respect to Defendant UTMB, however, the court previously acknowledged that while Plaintiff named UTMB as a defendant in his Amended Complaint, and UTMB filed the Motion to Dismiss along with TDCJ, Plaintiff never addressed UTMB in his Response.[7] Because Plaintiff has failed to defend his claims against UTMB beyond the Amended Complaint, the court determines that Plaintiff has abandoned his RA and ADA claims against UTMB, and those claims are no longer before the court.

## V.      Conclusion

For the reasons herein stated, Defendants TDCJ and UTMB's Motion to Dismiss (Doc. 17) is **granted in part** with respect to dismissal under Rule 12(b)(6) for failure to state a claim upon which relief may be granted; and **denied in part**, to the extent Defendants seek dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction.

As the court has determined that Plaintiff abandoned his RA and ADA claims against Defendant UTMB, it **dismisses with prejudice** these claims and this action with respect to UTMB **only**.  Rather than dismiss this action with respect to Defendant TDCJ, the court **permits** Mr. Lee to file a second amended complaint addressing the deficiencies noted in this Memorandum Opinion and Order with respect to TDCJ only. The Second Amended Complaint must be filed by **January 6, 2021.**  Failure to replead in accordance with the court's directive and the standards enunciated herein will result in dismissal of these claims and this action against TDCJ with prejudice under Rule 12(b)(6) for failure to state a claim upon which relief may be granted, or for failure to prosecute or comply with a court order pursuant to Federal Rule of Civil Procedure 41(b).

---

[7] *See supra* text accompanying note 4.

**Memorandum Opinion and Order – Page 18**

**It is so ordered** this 16th day of December, 2020.

Sam A. Lindsay
United States District Judge